ORTIZ, PLAINTIFF AND APPELLANT, *v.* MARI, DEFENDANT AND APPELLEE.

APPEAL from the District Court of Mayagüez in an Action of Debt.

No. 2635.—Decided February 12, 1923.

HIRE—SERVICES—PLEADING—FIXED PRICE.—A counter-complaint in which it is alleged that the plaintiff agreed to pay to the counter-plaintiff for his services a certain percentage which the parties would fix later according to local usage and custom states facts sufficient to constitute the cause of action arising from section 1447 of the Civil Code. The fact that an indefinite price was alleged does not warrant the conclusion that a specified price was not alleged.

ID.—ID.—REASONABLE VALUE.—It having been proved in this case that the agent rendered valuable services to his principal upon the latter's offer to pay him a certain percentage which would be fixed in the future, it is necessary

to conclude that five per cent of the profits is a reasonable rate and is in accordance with the usage and custom of the country.

The facts are stated in the opinion.

*Mr. J. Sabater* for the appellant.

*Messrs. Benet & Souffront* for the appellee.

MR. JUSTICE WOLF delivered the opinion of the court.

In this case the findings and opinion of the court below were as follows:

"Juan Ortiz Perichi filed suit against Ernesto Mari herein to recover $3,001.95, value of a lot of coffee received by Mari from Perichi.

"The defendant answered this complaint admitting almost all the facts set up therein save as to a small difference in the liquidation of the coffee, but stating that the said coffee was received in part discharge of services rendered by the defendant to the plaintiff, said difference being still pending settlement. Said Mari also filed a cross-complaint against Perichi for services rendered the latter in the capacity of attorney in fact and manager of his property from the year 1913 until June, 1920, in the sum of $11,217.75, that is to say, five per cent of the gross profits derived by cross-defendant Perichi during the period indicated, amounting to $224,355.50, and praying the court, after deducting from said amount value of the coffee taken on account, to direct the said cross-complainant to pay the sum of $8,258.03, together with the lawful interest on the said amount from the filing of the cross-complaint, and the costs of the action.

"The plaintiff and cross-defendant answered the cross-complaint admitting the total amount of the profits earned on the dates specified in the cross-complaint but denying that the cross-complainant was entitled to any remuneration for alleged services and likewise denying that such services had been rendered by the cross-complainant, contending that the cross-complainant acted simply as cross-defendant's bookkeeper, for which he received a fixed salary.

"In view of the length of the pleadings of the respective parties the court will not reproduce them in this opinion, but confines itself to the same as well as to the evidence adduced at the trial.

"The case came on for hearing on April 6, last, the plaintiff

and cross-defendant being represented by Attorney José Sabater and the defendant and cross-complainant by Attorneys Benet & Souffront, both oral and documentary evidence having been produced and the case submitted after oral argument by the attorneys for both parties.

"From the evidence examined as well as from the pleadings of the parties, so far as these were pertinent admissions of the rights of the parties, the court reached the following conclusions:

"That in the month of May, 1913, and at a time when the cross-defendant Perichi had to absent himself from the Island of Porto Rico for an indefinite period, he executed a public instrument bearing date of the 13th of the same month and year, which forms part of the record of this suit, naming Mari, in company with Miguel Juan Llaneras, his attorney in fact and the manager of his property.

"That attorney in fact Llaneras never made any use of said power of attorney nor acted as such manager, as is shown by the deed of revocation of the power of attorney which was executed by the said Perichi himself, joined to the record and adduced in evidence.

"That the cross-complainant Mari assumed the management of the property of Perichi and took charge of his affairs, such as the collection of rents, the making of mortgage loans, the purchase and sale of coffee and other products, collections, etc., under a promise by said Perichi to pay him a certain percentage of the profits derived, in keeping with the reasonable value of such services, Mari being at the time engaged as a means of livelihood in precisely the same kind of business entrusted him by Perichi, that is, the identical business to which Perichi dedicated himself.

"The parties agreed that the net business profits accruing to Perichi from the year 1913 to June, 1920, amounted to $224,355.50, but at the trial there was a certain variance between the evidence and the pleadings regarding the profits corresponding to the year 1913, wherefore only the profits from the year 1914 to June, 1920, amounting to $208,858.79, remained standing and undisputed.

"The court finds that not only during the time that Perichi was absent from Porto Rico but that up to June, 1920, the cross-complainant Mari acted as attorney in fact, agent and manager for the said cross-defendant Perichi, aiding with his knowledge, activity, efforts and counsel to earn the profits hereinbefore mentioned and received by cross-defendant Perichi.

"That the said Mari always acted in behalf of the cross-defendant, was a zealous and capable manager, devoted all the necessary time to Perichi's business, and was obliged to work until late at night and even on holidays, closely attending to each and all of Perichi's business operations, either as his attorney in fact or manager, negotiating, dealing in and attending to mortgage and other loans, the purchase and sale of coffee and other products peculiar to the business, as well as to collections and maturities.

"The court also finds that the reasonable value of the services rendered by the cross-complainant to the cross-defendant amount to a minimum of five percent of the profits derived by the cross-defendant from his business during the time the cross-complainant was his attorney in fact, agent and manager, and that such rate is in keeping with the usages and customs of the country.

"For the foregoing reasons and others unnecessary to mention the court is of opinion that the law and the facts are against the plaintiff and cross-defendant Juan Ortiz Perichi, and in favor of the defendant and cross-plaintiff Ernesto Mari Rodríguez, and that, therefore, judgment must be rendered holding that the cross-defendant owes and is indebted to the defendant and cross-complainant in the sum of $10,142.93, that is, five per cent of the profits obtained by plaintiff Juan Ortiz Perichi from the year 1914 to June, 1920, from which amount shall be deducted the sum of $3,001.95, value of the coffee delivered by the plaintiff and cross-defendant Perichi to the defendant and cross-complainant Mari, and further to deduct from the said amount the sum of $180 which he admitted he had received on account from plaintiff and cross-defendant Perichi as shown by the fifth count of the cross-complaint, there remaining a balance of six thousand nine hundred sixty and 98/100 ($6,960.98), which amount shall be paid by cross-defendant Perichi to cross-complainant Mari, plus lawful interest on said amount from October 17, 1920, until fully discharged, together with costs, disbursements and attorney fees in this suit."

This is another of the many cases in which the appellant has failed to file an assignment of errors and therefore we shall treat only the more salient points of the appeal.

We cannot agree with the appellant that the counter-complaint in this case depends exclusively on a *quantum meruit*. Paragraph 2 thereof sets up that the parties agreed

on a certain percentage of the profits, which was to be determined later between the parties according to the usages and customs of the country. We agree that this was a bit indefinite, but there was a distinct agreement for remuneration. In the case of *García* v. *Cañada,* 11 P. R. R. 403, cited by appellant, there was no contract shown, no agreement for remuneration. A similar comment applies to *Agosto* v. *Woods,* 13 P. R. R. 356. Section 1447 of the Civil Code on which appellant relies, says:

"Sec. 1447. In a lease of works or services, one of the parties thereto binds himself to give to the other the enjoyment or use of a thing for a specified time and a fixed price."

The counter-claim sets up a specified price or agreement, although the exact amount is indeterminate.

The appellant maintains that the court erred in finding that there was an express agreement between the parties for remuneration. This is the most important matter in the case. Was there such an agreement? The appellant points out that the appellee was employed by appellant as a bookkeeper and that the services rendered, though great, were within the scope of the employment for which appellee received $10 a month; that the appellant was continually loaning appellee money for various purposes; that appellee had a partnership with appellant wherein the former made money; that appellee during the same period was working for another merchant from whom he obtained $8,597.33, and other matters. Likewise appellant maintains that it is suspicious that the appellee should have allowed so many years to go by without presenting an account, especially as during all this time appellee was making weekly liquidations of his accounts with the appellant. We grant that the evidence is not as satisfactory as it might be and perhaps if it were a case of first impression we might have strong doubts. The parties, however, appeared before the court below, and

the court believed the statement of the appellee.   Tne failure to present a claim before is explained by the alleged continual promises of appellant to make a good settlement.   The fact that appellee accepted employment from Gregory shows that said appellee was not a mere employee of appellant and that extra services could readily be performed outside of his job as bookkeeper.   The work actually performed was essentially of a different nature.

On the whole record we find that the appellee rendered the most signal services, for which the amount of five percent should be considered reasonable, equitable and, as found by the court below, according to the customs of the country.

The judgment is

*Affirmed.*

Chief Justice Del Toro and Justices Aldrey, Hutchison and Franco Soto concurred.